KEVIN COHEN, ET AL.            CIVIL ACTION

VERSUS                       No. 17-935

ANTON BECKER, ET AL.          SECTION: "J"(1)

## ORDER & REASONS

## NATURE OF MOTION AND RELIEF REQUESTED

Before the Court is a *Motion for Summary Judgment* filed by The Commerce Insurance Company. **(Rec. Doc. 15.)** Plaintiffs filed an opposition to the motion (Rec. Doc. 16) and Commerce filed a reply (Rec. Doc. 20). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This action derives from a motor vehicle accident in Jefferson Parish, Louisiana that resulted in the death of Susan Abrams Tiano. On January 10, 2016, Ms. Tiano was riding as a guest passenger in a vehicle owned by Payless Car Rental, Inc., and operated by Anton Becker. While approaching the intersection of Highway 45 and Leo Kerner Lafitte Parkway, Becker allegedly drove through a flashing red light and stop sign. At the same time, another vehicle operated by Don Carmadelle, Jr. was also approaching the intersection and allegedly proceeded through a flashing yellow

caution light.  The vehicle operated by Carmadelle impacted the
passenger's side where Ms. Tiano was sitting in the vehicle
operated by Becker.  At the time of the incident, Becker and
Carmadelle were allegedly driving at approximately 17 and 50 miles
per hour, respectively.  Ms. Tiano suffered severe injuries from
the crash.  She was transferred to a hospital where she died as a
result of those injuries.

At the time of the collision, Becker and Carmadelle carried
automobile-liability insurance.  Becker was issued a policy by
Norfolk & Dedham Mutual Fire Insurance Company ("Norfolk") with
bodily injury liability limits of $250,000 per person and $500,000
per accident.  Carmadelle was issued a policy by State Farm Mutual
Automobile Insurance Company ("State Farm") with bodily injury
liability limits of $15,000 per person and $30,000 per accident.
Ms. Tiano had an Underinsured Motorist Policy ("UM Policy") with
The Commerce Insurance Company ("Commerce") with bodily injury
liability limits of $100,000 per person and $300,000 per accident.

Plaintiffs, Kevin Cohen and Kimberly Cohen Fine, brought this
suit individually and on behalf of their deceased mother, Ms.
Tiano.  Plaintiffs allege that Becker's failure to obey traffic
signals and Carmadelle's excessive rate of speed through a yellow,
flashing caution light resulted in and caused Ms. Tiano's fatal
injuries.  Plaintiffs named as Defendants, Becker, Norfolk,
Carmadelle, State Farm, and Commerce.  Presently before the Court

is Commerce's *Motion for Summary Judgment* **(Rec. Doc. 15)** and Plaintiffs' opposition thereto (Rec. Doc. 16). Commerce has also submitted a reply to Plaintiffs' opposition. (Rec. Doc. 20.) The motion is now before the Court on the briefs and without oral argument.

<u>**PARTIES' ARGUMENTS**</u>

Commerce moves for summary judgment on the grounds that the UM Policy issued to Ms. Tiano is not triggered in this case. First, Commerce argues that Massachusetts law applies to the UM Policy. Under Massachusetts law, underinsured ("UM") benefits are not available when the tortfeasor's liability limits are greater than the UM Policy limits. Commerce states that the bodily injury liability limits in the policies insuring Becker and Carmadelle – issued by Norfolk and State Farm, respectively – are not less than the UM Policy limits issued to Ms. Tiano. Therefore, Commerce contends that Becker and Carmadelle are not underinsured motorists, its policy is not triggered, and the claims against it should be dismissed as a matter of law.

Plaintiffs oppose the motion for summary judgment. First, Plaintiffs contend that under a choice of law analysis, Louisiana law governs the UM Policy, not Massachusetts law. As such, Plaintiffs state that their damages exceed the Becker and Carmadelle's liability limits and Louisiana law allows them to recover the full extent of their damages. Second, Plaintiffs argue

that even if Massachusetts law applies, Commerce's motion is premature until the liability of the parties is either admitted or judicially determined. Plaintiffs acknowledge that Becker's liability limits exceed that of Ms. Tiano's UM Policy limits, but note that Carmadelle's policy limits are far less than the subject UM Policy limits. As such, Plaintiffs maintain that until there is a determination of liability, there is a question of fact as to whether Ms. Tiano's UM Policy limits are less than the tortfeasors' liability limits in this case.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. P. 56(c)). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37

F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### 1. Choice of Law Analysis

The Court must first determine whether Louisiana or Massachusetts law governs the application of the UM Policy at issue. Commerce argues that Massachusetts law applies; Plaintiffs contend that Louisiana law applies. When determining which state law governs, courts apply the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that in diversity cases a federal court must apply the same conflict of laws analysis that the state courts of the forum would use); La. Civ. Code Ann. art. 14. Accordingly, Louisiana's conflict of law provisions control this Court's determination of which state's law governs the UM Policy at issue.

The Louisiana Supreme Court has established that Louisiana's UM law does not automatically apply to a UM claim under a policy issued in another state when a Louisiana resident is involved in the accident, even when the accident occurs in Louisiana. *Champagne v. Ward*, 2003-3211, p. 22 (La. 1/19/05); 893 So. 2d 773, 786. Rather, "the appropriate starting point in a multistate case . . . is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the UM policy." *Id*. at p. 22; 893 So. 2d at 786.

## A. <u>Louisiana UM law versus Massachusetts UM law</u>

Plaintiffs and Commerce agree that there is a difference between the Massachusetts UM laws and the Louisiana UM laws. The Court begins with a brief overview of each.

The Massachusetts UM law is "remedial in nature and expressly intended to restructure the automobile liability insurance system in a way which lowers rates to the consuming public while continuing to provide reduced, but effective, levels of coverage." *Hanover Ins. Co. v. Pascar*, 421 Mass. 442, 445–46, 658 N.E.2d 142, 144 (1995). In order to achieve this objective and reduce premiums, the Massachusetts legislature made UM policies optional, prohibited the practice of stacking UM coverage on different policies, and established a trigger to UM coverage. *See Alguila v. Safety Inc. Co.*, 416 Mass. 494, 498–99, 624 N.E.2d 79, 81–82 (1993) (citation omitted).

Under Massachusetts UM law, UM benefits are due only when the tortfeasor's liability policy limits are less than the claimant's policy limits for UM coverage. *See Murphy v. Safety Ins. Co.,* 429 Mass. 517, 520, 709 N.E.2d 410, 412 (1999). The statute governing Massachusetts UM policies explains, in pertinent part, that coverage for underinsured vehicles shall provide:

> protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles, trailers or semitrailers, to

which a bodily injury liability or bond amount or policy
limit is less than the policy limit for [underinsured]
motor vehicle coverage and is insufficient to satisfy
the damages of persons insured thereunder and only to
the extent that the [underinsured] motor vehicle
coverage limits exceed limits of bodily injury liability
subject to the terms of the policy.

Mass. G.L. c. 175, § 113L(2). The UM policy that Commerce issued to Ms. Tiano is a standard Massachusetts automobile insurance policy which must be construed in conformity with G.L. c. 175 § 113L. *See Murphy*, 429 Mass. At 520, 709 N.E.2d at 413 n.6 (citations omitted). The UM policy states, in relevant part:

Sometimes an owner or operator of an auto legally
responsible for an accident is underinsured. Under this
Part, we will pay damages for bodily injury to people
injured or killed as a result of certain accidents caused
by someone who does not have enough insurance.

We will only pay if the insured person is legally
entitled to recover from the owner or operator of the
underinsured auto. An auto is underinsured when the
limits for automobile bodily injury liability insurance
covering the owner and operator of the auto are:

1. Less than the limits shown for this Part on your
Coverage Selections Page; and

>    2. Not sufficient to pay for the damages sustained
>       by the injured person.

(Rec. Doc. 15-7 at 33.)

Both the Commerce UM policy terms and the Massachusetts statute mandate a comparison of a claimant's UM policy limits and the responsible party's liability policy limits. To qualify as "underinsured" and trigger the UM benefits, the UM policy limits must be greater than the liability policy limits available *and* the liability policy limits must be insufficient to cover the claimant's damages. Even if a UM policy is triggered by satisfying those two requirements, the UM policy covers only up to the amount that the UM policy limit exceeds the bodily injury liability limit.

On the other hand, Louisiana UM law mandates a broader application of UM coverage. Louisiana UM law is governed by La. R.S. 22:1295, which was designed to promote full recovery for innocent tort victims, and requires that motor vehicle liability policies issued in the state provide UM coverage, unless such coverage is validly rejected by the insured. La. Stat. Ann. § 1295(1)(a)(i); *Wendling v. Chambliss*, 2009-1422 (La. App. 1 Cir. 3/26/10); 36 So. 3d 333. Under the statute, an "underinsured motor vehicle" is defined as "an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of *damages* suffered by an insured . . . at the time of an accident." La. R.S. 22:1295(2)(b) (emphasis added).

Thus, Louisiana law provides that UM benefits are available whenever the injured victim's damages exceed the available liability insurance coverage, without further qualification. *See Hollins v. Adair*, 2013-1622 (La. App. 1 Cir. 6/3/14); 2014 WL 25479772013.

Having established that there is a difference between Louisiana and Massachusetts UM laws, the Court turns to which state's UM law governs the UM Policy issued by Commerce in this case.

### B. Conflict of Laws Analysis

The conflict of law analysis regarding an insurance policy is codified in Louisiana Civil Code articles 3515 and 3537. Article 3515 provides, in pertinent part, that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. The article further provides two factors which the court must consider:

(1) the relationship of each state to the parties and the dispute; and

(2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow

from subjecting a party to the law of more than one
state.

*Id.* Similarly, Article 3537 specifically concerns contracts or
conventional obligations and provides that in determining which
state law applies, the Court must also consider, in addition to
the factors articulated in Article 3515, the following:

(1) the pertinent contacts of each state to the parties
and the transaction, including the place of negotiation,
formation, and performance of the contract, the location
of the object of the contract, and the place of domicile,
habitual residence, or business of the parties;

(2) the nature, type, and purpose of the contract; and

(3) the policies referenced in Article 3515, as well as
the policies of facilitating the orderly planning of
transactions, of promoting multistate commercial
intercourse, and of protecting one party from undue
imposition by the other.

La. Civ. Code art. 3537. "The objective of those provisions is to
identify the state whose policies would be most seriously impaired
if its laws were not applied to the issue at hand." *Champagne*,
2003-3211, p. 2; 893 So. 2d at 786 (citing to La. Civ. Code arts.
3515 and 3537). "[T]he law of the state applicable to the
insurance contract and its UM coverage is determined by evaluating
the strength and pertinence of the relevant policies of the

11

involved states in light of the factors set forth in those Civil Code articles." *Id*.

In *Champagne v. Ward*, the Louisiana Supreme Court considered whether Louisiana or Mississippi law applied to a UM policy issued in Mississippi to a Mississippi resident injured in Louisiana. 2003-3211, p. 1; 893 So. 2d at 774. The court recognized that the UM laws in Mississippi and Louisiana had competing policies: Mississippi UM law offsets a UM carrier's liability based on the amount collected from the tortfeasor's liability insurer, while Louisiana UM law prohibits offsets and provides that UM carriers are liable for damages that exceed the tortfeasor's liability limits. *Id.* at pp. 3-4; 893 So. 2d at 776, 788. The court also considered the following: the accident occurred in New Orleans, Louisiana; the defendant was a Louisiana resident; the defendant's liability insurance policy was issued in Louisiana; the plaintiff was a Mississippi resident; the plaintiff's insurance policy was negotiated and formed in Mississippi; the vehicle on which the plaintiff purchased coverage was garaged and registered in Mississippi; and the plaintiff's UM policy was a Mississippi contract. *Id*. at pp. 26-27; 893 So. 2d at 789. The court determined that the offsets available under Mississippi law contravened Louisiana policy because "[a]ny credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection

required by Louisiana's statute." *Id*. However, the court noted that Mississippi had a strong interest in the regulation of its insurance industry and in the contractual obligations outlined therein. *Id*. After balancing the state contacts and the respective state policies and interests, the court ultimately found that Mississippi's policies would be more seriously impaired if its law was not applied to the insurance policy. *Id*. The court stated, "Mississippi has a more substantial interest in the uniform application of its laws governing contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana." *Id*.

*Dreisel v. Metropolitan Property and Casualty Ins. Co.*, a case relied on by the *Champagne* court, reached the same conclusion under similar facts analyzing Massachusetts UM law. 2001-2705 (La. App. 1 Cir. 12/20/02); 836 So. 2d 347. In *Dreisel*, the plaintiff was a Massachusetts resident and guest passenger in a single-vehicle accident in St. Tammany Parish, Louisiana. *Id*. at pp. 2-3; 836 So. 2d at 347. The vehicle was owned and operated by a Louisiana resident. *Id*. The plaintiff sought recovery under her own UM policy. *Id*. The court considered that the insurance contract was negotiated and formed in Massachusetts; the vehicles on which the plaintiff purchased coverage were registered and garaged in Massachusetts; the insurance policy was a Massachusetts contract which provided for the application of Massachusetts law

13

relating to automobile insurance; and nothing in the policy indicated that the parties contemplated the application of another state's laws relative to accidents occurring outside of Massachusetts. *Id*. at pp. 6-8; 836 So. 2d at 351. The court concluded that Massachusetts' policies would be more seriously impaired if its law was not applied to the UM policy. *Id*. The court reasoned that "the application of Louisiana law to the insurance policy would result in the abrogation of a Massachusetts contract." *Id*. at p. 8; 836 So. 2d at 352. Just like *Champagne*, the court also found that "Massachusetts has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who happened to have sustained an injury while transitorily within its borders." *Id.*; *see also Zuviceh v. Nationwide Ins. Co.*, 2000-0773 (La. App. 1 Cir. 5/11/01); 786 So. 2d 340 (applying Mississippi UM law when out-of-state plaintiff was involved in accident in Louisiana and the UM policy was issued, negotiated, and formed in Mississippi).

Here, there are no factual disputes regarding the parties' contacts with Louisiana and Massachusetts. The contacts with Louisiana include the following: the accident occurred in Louisiana; the other vehicle in the accident was owned and operated by Carmadelle, a Louisiana resident; Ms. Tiano and Becker were in a rental car owned by Payless Car Rental, Inc., which is authorized

14

to do business in Louisiana; Louisiana emergency services responded to the accident; Ms. Tiano received medical care in Louisiana; and Carmadelle's insurance policy was negotiated and issued in Louisiana.

The pertinent contacts with Massachusetts include the following: Ms. Tiano was a Massachusetts resident; the Commerce UM policy was negotiated and formed in Massachusetts; the Commerce UM policy states that it is a legal contract under Massachusetts law; the vehicle insured by the Commerce UM policy was registered and garaged in Massachusetts; Becker is a resident of Massachusetts; and Becker's insurance policy was negotiated and formed in Massachusetts.

The Court finds that the *Champagne*, *Dreisel*, and *Zuviceh* decisions are persuasive and that they demonstrate that Massachusetts law should govern the UM Policy in this case. Massachusetts, as the insurance-providing state, has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in the application of its laws to Plaintiffs. This is especially true where, as here, two out of three people involved in the accident are out-of-state parties who were transitorily within the borders of Louisiana.[1] *See Champagne*, 2003-3211, pp. 26-27; 893 So. 2d at

---

[1] Becker and Ms. Tiano were on vacation in Louisiana, thus, they were transitorily in the state.

789. Moreover, the fact that UM policy at issue was formed, negotiated, and issued in Massachusetts to a Massachusetts resident is significant. "Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy." *Cherkaoui v. Pinel*, 16-03, 2016 WL 8787056, at *2 (E.D. La. Nov. 3, 2016) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999)). As the Louisiana Supreme Court in *Champagne* stated, "The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." *Champagne*, 2003-3211, pp. 26-27; 893 So. 2d at 788.

Plaintiffs rely on *Dunlap v. Hartford Ins. Co. of Midwest*, to support their argument that Louisiana UM law should apply. 2004-0725 (La. App. 1 Cir. 3/24/05); 907 So. 2d 122. This case is easily distinguishable from the matter at hand and the cases cited by the Court. In fact, the *Dunlap* court explicitly does so itself in its opinion. *Id*. at pp. 6-8; 907 So. 2d at 126-27 ("We note also that this case is readily distinguishable from the *Zuviceh, Dreisel,* and *Champagne* cases."). In *Dunlap*, the plaintiff was a Louisiana resident who was injured in an automobile accident that occurred in Louisiana. *Id*. at p. 2; 907 So. 2d at 122-123. The plaintiff sought coverage under the UM policy issued to his

employer who owned the vehicle. The policy was negotiated and issued in Michigan; the employer was based in Michigan but conducted business nationwide. *Id*. The court determined that Louisiana UM law applied, noting that the subject policy "provided commercial coverage for a fleet of vehicles used nationwide" and reflected the anticipation that another state's laws might apply. *Id*. at p. 8; 907 So. 2d at 126. The court also noted that the employer-owner had a substantial commercial presence in Louisiana and received the benefits of Louisiana laws by maintaining offices and conducting business in the state. *Id*. pp. 6-7; 907 So. 2d at 126-27. Unlike *Dunlap*, before the accident at issue here, Ms. Tiano and Commerce had no reason to seek the protection of Louisiana's laws, and nothing in the policy indicated that the parties contemplated the application of other states' laws. In fact, the Commerce UM policy explicitly states that "[t]his policy is a legal contract under Massachusetts law." (Rec. Doc. 15-3 at 10.) Moreover, Plaintiffs are seeking coverage under their own (Ms. Tiano's) out-of-state UM policy, not the policy of the owner, Payless Car Rental, Inc., who is not even a party in this litigation. [2]

Considering the strength and pertinence of the relevant policies of the involved states and the contacts between the

---

[2] Plaintiffs have not brought claims against Payless Car Rental, Inc. or its insurer.

parties and those states, it is clear that Massachusetts has a stronger interest in its policies being carried out and would be more substantially impacted if its laws were not applied. In sum, the Court finds that Massachusetts UM law governs the UM Policy at issue.

**2. Whether the Commerce Policy is Triggered**

Having determined that Massachusetts UM law applies, the Court now considers whether the UM benefits are available in this case. In order for a UM policy to trigger, the vehicle responsible for a claimant's damages must qualify as "underinsured." Under Massachusetts law, a tortfeasor's vehicle is "underinsured" when (1) the liability limits of the policy covering that vehicle are less than the UM limits stated in the UM policy, and (2) the liability limits are less than the claimant's bodily injury damages. *Murphy v. Safety Ins. Co.*, 429 Mass. 517, 520, 709 N.E.2d 410, 412 (1999). Generally, under Massachusetts law, the policy limits and resources of multiple tortfeasors may be combined to determine whether the UM policy applies (i.e., whether tortfeasors are "underinsured"). *See Hanover Ins. Co. v. Pascar,* 421 Mass. 442, 446, 658 N.E.2d 142, 144 (1995) ("[T]he sum of the personal injury liability limits of separate policies insuring joint tortfeasors should be considered for the purpose of deciding whether underinsured coverage will be available to an injured insured.").

Commerce, as the UM carrier, argues that Plaintiffs are not entitled to UM benefits as a matter of law because the combined liability limits of Becker and Carmadelle, the allegedly negligent operators of the vehicles in this case, are $265,000 per person and $530,000 per accident, which is more than Ms. Tiano's UM Policy limit of $100,000 per person and $300,000 per accident. Commerce contends that under these circumstances, Massachusetts law and the language of the UM Policy mandate that it has no obligation to cover Plaintiffs' UM claim.

Plaintiffs first argue that Commerce has failed to show that they are not entitled to UM benefits because Plaintiffs have not yet received insurance proceeds in excess of the amount of the UM Policy limits. Plaintiffs also argue that Commerce's motion is premature because the issue of liability has not yet been determined. While acknowledging that the combined policies of Becker and Carmadelle are greater than the UM Policy coverage, Plaintiffs point out that Carmadelle's individual liability policy limits ($15,000 per person and $30,000 per accident) are less than the UM limits at issue. Thus, Plaintiffs assert that until both Becker and Carmadelle are determined to be "legally responsible" for the accident, the Court cannot consider whether they are underinsured with respect to the UM Policy.

With respect to Plaintiffs' first argument regarding the lack of insurance proceeds they have received up to this point,

Massachusetts courts have made clear that the reference to the responsible party's policy limits does not refer to the total amount *actually* collected by a claimant. Rather, it is the total policy limits *available* that must be less than the UM policy for UM benefits to trigger. *See Alguila v. Safety Ins. Co.*, 416 Mass. 494, 495-96, 624 N.E.2d 79, 80 (1993) ("The policy explicitly provides that a determination whether a tortfeasor's automobile is underinsured requires a comparison of the claimant's and tortfeasor's limits, not of the claimant's limits and the claimant's actual recovery from the tortfeasor's insurer."). "The question of the amount actually received from the tortfeasor becomes relevant only after a determination is made that a tortfeasor's automobile is underinsured." *Murphy v. Safety Ins. Co.*, 429 Mass. 517, 520, 429 Mass. 517, 520, 709 N.E.2d 410, 412 (1999).

Commerce moves for summary judgment essentially on the grounds that the vehicles operated by Becker and Carmadelle are *not* underinsured. However, this argument appears to be based on the assumption that Becker and Carmadelle are joint tortfeasors, and therefore, are jointly liable for Plaintiffs' damages. Massachusetts law follows the traditional principle of joint and several liability in tort cases, where a plaintiff injured by more than one tortfeasor may sue any, or all of them, for her full damages. *See Shantigar Found. v. Bear Mountain Builders*, 441 Mass.

131, 141, 804 N.E.2d 324, 332 (2004). Here, Becker and Carmadelle are merely *alleged* joint tortfeasors, who have each denied liability. (Rec. Docs. 7, 13.) The governing UM statute explicitly provides that UM policies are for the "protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of" underinsured vehicles. Mass. G.L. c. 175 § 133L(2). It has yet to be determined whether both Becker and Carmadelle, or either of them, are liable for damages to Plaintiffs. Their negligence has not been established, including whether one was solely responsible for the accident or whether both were at fault.

Neither party cites to a Massachusetts court opinion that directly addresses this issue: that is, when multiple tortfeasors have all denied liability, whether there must be a determination of fault before courts may consider whether UM benefits are available. The cases cited by Commerce in support of its motion for summary judgment are unhelpful because the claimants in those cases were, in one way or another, *legally entitled* to recover from the tortfeasors. *See Murphy v. Safety Ins. Co.*, 429 Mass. 517, 709 N.E.2d 410 (Mass. 1999) (uncontested that the accident was caused by the negligence of other driver); *Hanover Ins. Co. v. Pascar*, 421 Mass. 442, 443, 658 N.E.2d 142, 142-43 (1995) (parties agreed that the driver of the first vehicle and the driver of the second vehicle were responsible, as joint tortfeasors, for

the plaintiff's injuries; the plaintiff, who was passenger in the first vehicle, settled his claims against each driver for $8,000, with $4,000 being paid by each driver's insurer); *Davis v. Auto-Owners Ins. Co.*, 420 N.W.2d 347, 348 (N.D. 1988) (settlement reached between plaintiff, driver, and driver's insurer). Only mere allegations are presented here.

The Court is persuaded by the reasoning in *Allstate Insurance Company v. Hilbun*, where a federal court interpreted a similar Mississippi UM statute[3] under analogous facts. 703 F. Supp. 533 (S.D. Miss. 1988). The plaintiff was injured in an automobile accident with two other vehicles, one operated by Crawford and the other operated by Richardson. *Id*. at 534. Richardson had $350,000 of liability coverage per person and per occurrence, Crawford had $10,000 of liability coverage per person and per occurrence, and the plaintiff's UM policy had limits of $100,000 per person and $300,000 per occurrence. *Id*. at 536. Both operators denied liability for the plaintiff's damages. *Id*. The UM insurance carrier sought a declaratory judgment that it had no duty to provide UM benefits to the plaintiff because the combined liability limits of Crawford and Richardson ($360,000) exceeded the UM policy limit ($100,000). *Id*. at 535. The court denied summary judgment

---

[3] Like Massachusetts' UM law, in *Hilbun,* the UM benefits in Mississippi were only available if the bodily injury liability limits were less than the UM policy limits. *Id*. at 536.

because a question of fact remained as to whether one operator or both were at fault. *Id*. The court noted that depending on who was ultimately held at fault, the available liability policy limits may or may not have been less than the UM policy limits (i.e., the UM policy may or may not have triggered). *Id*; *see also Carson by Chaffee v. Colonial Ins. Co. of California*, 724 F. Supp. 1225, 1227 (S.D. Miss. 1989) (stating that to be "legally entitled" to a recover from a UM policy, a claimant must establish that the accident and damages were caused by the negligence of the alleged tortfeasors); *Woodfield v. Bowman*, 93-4201, p. 3 (E.D. La. 2/1/95); 1995 WL 41716, at *3. ("Under Mississippi law, it is appropriate to stack or cumulate the amount of available insurance coverage in determining whether a motorist is uninsured. The Court cannot make that determination, however, until the trier of fact has apportioned fault among the parties.").

Turning to the matter at hand, if Becker were to be ultimately held solely at fault for Plaintiffs' damages, then the UM Policy would not trigger because Becker's liability limits ($250,000 per person and $500,000 per accident) are greater than the UM policy limits ($100,000 per person and $300,000 per accident). It follows then that the same result would occur if both Becker and Carmadelle were held responsible for Plaintiffs' damages because with their combined policy limits neither of them would be considered underinsured. However, if it were determined that Plaintiffs'

damages were caused solely by Carmadelle's negligence, then the UM benefits would be available because Carmadelle's policy limits ($15,000 per person and $30,000 per accident) are less than the UM policy limits ($100,000 per person and $300,000 per accident). Thus, Commerce may be obligated to provide the proceeds of the UM policy depending on the determination of fault. However, such a determination would entail resolving factual disputes, which is an inappropriate task for the Court to undertake on a motion for summary judgment.

The Court's decision is further bolstered by the purpose, unambiguous language, and "fair meaning" of the UM statute and policy. *See Norfolk & Dedham Mut. Fire Ins. Co. v. Quane*, 442 Mass. 704, 707, 816 N.E.2d 521, 524 (2004). The statute governing UM policies explicitly states that the policies are for the "protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of" underinsured vehicles. Mass. G.L. c. 175, § 113L(2). Furthermore, the Commerce UM Policy itself thrice mentions the requirement of legal responsibility: "owner or operator of an auto *legally responsible* for an accident"; "We will only pay if the insured person is *legally entitled* to recover from the owner or operator of the underinsured auto"; "we will pay damages for bodily injury to people injured or killed as a result of certain accidents *caused* by someone who does not have enough insurance." (Rec. Doc. 15-7 at

33) (emphasis added). It is clear that fault is a significant factor in determining the availability of UM benefits. In conclusion, the Court finds that issues of fact preclude it from granting summary judgment regarding Commerce's duty to provide UM benefits.

**CONCLUSION**

Accordingly,

**IT IS ORDERED** that Commerce's *Motion for Summary Judgment* **(Rec. Doc. 17)** is **DENIED**.

New Orleans, Louisiana this 8th day of February, 2018

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE